IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.  12 C 1764 |
| ) | |
| CITY OF CHICAGO, a municipal corporation, ) | Hon. Charles R. Norgle |
| Chicago Police Officer GEORGE MOUSSA and ) | Judge Presiding |
| Chicago Police Officer JOSEPH LOPEZ, ) | |
| ) | |
| Defendants. ) | |

**SECOND AMENDED COMPLAINT**

George Brown, by his attorney, Peter V. Bustamante, for his Second Amended Complaint against the City of Chicago, Chicago Police Officer George Moussa and Chicago Police Officer Joseph Lopez, states:

**JURISDICTION AND VENUE**

1. The plaintiff, George Brown, brings this action to redress injury done to him by the defendants' intentional deprivation of Brown's rights under the Fourth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

2. The jurisdiction of this court is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  Plaintiff's Illinois state law claims are permitted by the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3. Because the deprivation of constitutionally protected rights occurred within the Northern District of Illinois, venue is proper in this district.

1

## PARTIES

4. George Brown is a natural person, residing in the City of Chicago, Cook County, Illinois.

5. The City of Chicago is a municipal corporation, organized and existing under and by virtue of the laws of the State of Illinois.

6. Through its operations the City of Chicago established and organized the Chicago Police Department.

7. George Moussa is a natural person, employed by the City of Chicago as a police officer, Star #5509.

8. Joseph Lopez is a natural person, employed by the City of Chicago as a police officer, Star #15739.

## FACTS

9. On March 10, 2011, at approximately 11:55 p.m., George Brown was driving a black, 2011 Chevy Tahoe, SUV in an easterly direction on Quincy Street near its intersection with Laramie Avenue, Chicago, Illinois.

10. At all times pertinent, Grover Tucker was a passenger in George Brown's SUV.

11. At the time and place aforesaid, Officer Lopez was a right front seat passenger in a Chicago Police squad car driven by Sergeant John Cannon. In the squad car with Officer Lopez and Sergeant Cannon, were Officers Anthony Keany and Rocco Pruger.

12. At the time and place aforesaid, Officer Moussa was a back seat passenger in a separate Chicago Police squad car driving directly behind the Chicago Police squad car driven by Sergeant Cannon. In the squad car with Officer Moussa were Officers Arturo Bracho and Eric Rashan.

13. The aforementioned squad cars were part of the Chicago Police Mobile Strike Force and were traveling south on Laramie Avenue near its intersection with Quincy Street.

14. At the aforesaid location Quincy Street is a one-way street for eastbound traffic.

15. At the time and place aforesaid, the Chicago Police car driven by Sergeant Cannon made a right turn westbound onto Quincy Street, which was a one-way street eastbound.

16. The squad car in which Officer Moussa was a passenger also made a right turn westbound onto Quincy Street, behind the squad car driven by Sergeant Cannon.

17. The squad car driven by Sergeant Cannon came to a stop facing the front of the SUV driven by George Brown.

18. After the squad car driven by Sergeant Cannon came to a stop facing the front of the SUV driven by George Brown, the police lights of the squad car were not activated.

19. According to Officer Lopez the police stopped George Brown for not having his car headlights illuminated.

20. At the time and place aforesaid, Officer Lopez and Sergeant Cannon exited the squad car and approached George Brown's car with their guns drawn.

21. George Brown exited his car and ran.

22. At the time that George Brown exited his car and ran, the police lights of the squad car were not activated.

23. When George Brown started to run, Officer Lopez holstered his weapon and chased him.

24. When George Brown started running Officer Lopez put out a radio call that George Brown was fleeing.

3

25. Upon hearing the call, the Chicago Police Squad car with Officer Moussa as a passenger backed out of Quincy Street, and went around the block to the west end of Quincy Street.

26. The squad car in which Officer Moussa was a passenger came to a stop at the west end of Quincy Street.

27. Officer Moussa and the two other officers got out of the squad car and started running toward George Brown.

28. At or near 5251 West Quincy Street, Officer Lopez tackled George Brown and threw him to the ground.

29. Officer Moussa arrived at 5251 West Quincy Street at the time that Officer Lopez tackled George Brown.

30. Officer Lopez struck George Brown on top of the head with his fists, then he put his hands around George Brown's neck, squeezed Brown's neck, and shouted: "Spit it out."

31. Upon arriving at 5251 West Quincy, Officer Moussa discharged a Taser on George Brown.

32. While in the presence of Officer Lopez, Officer Moussa continued to discharge the Taser on George Brown for a total of four times.

33. Officer Lopez did nothing to stop Officer Moussa from continuing to discharge the Taser on George Brown.

34. George Brown was transported to Loretto Hospital where he was treated for puncture wounds.

35. Officer Lopez was examined at Loretto Hospital at approximately 2:30 a.m. on March 11, 2010.

4

36. Dr. Michelle Everett who examined Officer Lopez found that Officer Lopez complained of being struck in the jaw but her exam findings did not show anything.

37. Officer Lopez wrote out complaints against George Brown charging him with aggravated battery, reckless conduct, and resisting arrest.

38. Officer Moussa wrote out complaints against George Brown charging him with reckless conduct, headlights required (front headlights not illuminated), resisting arrest, and criminal trespass to motor vehicle.

39. George Brown's bail was set at One Hundred Thousand Dollars ($100,000.00).

40. George Brown's bail was set at One Hundred Thousand Dollars because Officer Lopez charged Brown with aggravated battery.

41. Pursuant to the Chicago Police Department Bail Bond Manual, if Brown had been charged only with misdemeanor resisting arrest or reckless conduct, his bail would have been no more than Fifteen Hundred Dollars ($1,500.00).

42. George Brown was transported to Cook County Jail.

43. George Brown was unable to make bond and he remained in Cook County Jail for 334 days, until February 7, 2012.

44. On March 24, 2011, Officer Moussa testified at George Brown's preliminary hearing and falsely stated under oath that he saw George Brown punch Officer Lopez in the face with a closed fist.

45. On March 31, 2011, the Cook County State's attorney brought an information charging George Brown with aggravated battery to a police officer. All other charges were dropped.

46. On February 7, 2012, George Brown was tried before the Criminal Court and was found not guilty of aggravated battery.

47. On February 7, 2012, the Criminal Court found George Brown guilty of resisting arrest and sentenced him to 300 days in jail, time-served.

48. On March 15, 2013, Brown filed a petition to vacate the February 7, 2012, judgment and sentence.

49. In his petition, Brown contended that Officer Lopez committed perjury when he testified that the only reason he pulled Brown over on the night in question was because Brown's SUV did not have its headlights on.

50. Brown presented the Criminal Court with video from a police observation device ("POD") that showed Brown's SUV had its headlights on immediately before Officer Lopez stopped him.

51. The Criminal Court vacated the judgment and sentence, and set the matter for trial.

52. On Brown's motion to quash arrest, Officer Lopez testified that the SUV with headlights on shown in the POD video was not Brown's SUV.

53. Officer Lopez testified that there was another black SUV, without its headlights illuminated, behind the one shown on the POD video.

54. Brown went to trial, for the second time, based on the information originally filed in the case, which charged Brown with aggravated battery for allegedly punching Officer Lopez in the face.

55. The jury heard evidence of Brown running away, and resisting getting handcuffed.

56. The jury found Brown guilty of resisting arrest.

57. Brown received a sentence of 300 days in jail, time-served.

58. Brown appealed and on August 21, 2017, the Illinois Appellate Court issued its opinion, reversing Brown's conviction and remanding for further proceedings.

59. On December 15, 2017, the Cook County State's Attorney sought and obtained a *nolle prosequi* on the criminal case against Brown.

60. The fact that the criminal proceedings were terminated against Brown by *nolle prosequi* is indicative of his innocence.

61. The findings of the Illinois Appellate Court in connection with Brown's motion to quash his arrest, also support the fact that the termination of the criminal proceedings against him are indicative of his innocence.

62. The Illinois Appellate Court stated, at paragraph 38, "So there were a lot of considerations that militated in favor of quashing the arrest. The significant inconsistencies in the testimony, especially in how the narrative of the arrest evolved after the POD camera video was discovered, raise some significant red flags. Viewing the video in conjunction with all the testimony in the record, there are reasons to believe that the first vehicle the officers confronted was defendant's (Brown's) vehicle with its lights on and, therefore, that the officers lacked a legal basis to arrest defendant."

63. The rulings of the Illinois Appellate Court further support the fact that the termination of the criminal proceedings against Brown are indicative of his innocence.

64. At paragraph 45, the Illinois Appellate Court ruled that after Brown's acquittal for aggravated battery, and in light of the new evidence that caused his conviction for resisting arrest to be vacated, Brown should not have been prosecuted under a stale charging instrument that

7

arguably did not even meet the lowest standards required. And, that Brown was forced to defend himself against a charge that was not even pending against him at the time of his jury trial.

65. At all times pertinent Chicago Police Officers Moussa and Lopez were acting within the course and scope of their employment with the City of Chicago

66. At all times pertinent Police Officers Moussa and Lopez were acting under the color of state law.

### COUNT I – CIVIL RIGHTS - OFFICERS MOUSSA & LOPEZ
### EXCESSIVE FORCE, FABRICATION OF EVIDENCE & PRE-TRIAL DETENTION UNSUPPORTED BY PROBABLE CAUSE

1-66. Plaintiff George Brown, repeats and realleges the allegations contained in paragraphs 1 through 66 of the Facts, as paragraphs 1 through 66 of Count I, as though set forth verbatim herein.

67. 42 U.S.C. § 1983, provides that every person who, under color of law, subjects any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States, shall be liable to the injured party in an action at law, suit in equity or other proper proceeding for redress.

68. The 4th Amendment of the U.S. Constitution provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

69. The 5th and 14th Amendments of the U.S. Constitution provide that a person cannot be deprived of life, liberty, and property without due process.

8

70. Defendant Officer Moussa violated George Brown's constitutionally protected rights in that:

   (a) He used excessive and unnecessary force on George Brown by repeatedly discharging a Taser on George Brown;

   (b) He illegally stopped and seized George Brown without probable cause or legal justification by discharging a Taser on George Brown;

   (c) He falsely testified at the March 24, 2011 preliminary hearing, that George Brown punched Officer Lopez in the face with a closed fist.

71. Defendant Officer Lopez violated George Brown's constitutionally protected rights in that:

   (a) He falsely testified that George Brown punched him in the face with a closed fist;

   (b) He falsely charged George Brown with aggravated battery;

   (c) He falsely testified that the only reason he stopped George Brown's SUV was because the SUV's headlights were not illuminated;

   (d) He illegally stopped, seized, searched and arrested George Brown without probable cause or legal justification;

   (e) He carried out an illegal arrest and/or detainment of George Brown;

   (f) He had a reasonable opportunity to intervene and failed to intervene to stop Officer Moussa from repeatedly discharging a Taser on George Brown;

   (g) He falsely testified that the SUV with headlights illuminated as shown in the POD video was not Brown's vehicle;

   (h) He falsely testified that there was another SUV without its headlights illuminated that was behind the SUV shown on the POD video.

72. As a direct and proximate result of the intentional deprivation of George Brown's constitutionally protected rights, George Brown sustained physical injuries, was incarcerated and

9

spent 343 days in jail awaiting trial. As a further direct and proximate result of the defendants intentional misconduct George Brown sustained financial loss.

**WHEREFORE**, George Brown prays for judgment in his favor and against the defendants, Officers George Moussa and Joseph Lopez, and that he be awarded compensatory and punitive damages, reasonable attorney's fees, the costs of this action, and such other and further relief as the Court deems just.

## COUNT II – STATE LAW ASSAULT

1-66. Plaintiff, George Brown, repeats and realleges paragraphs 1 through 66 of Count I as paragraphs 1 through 66 of Count II, as though set forth verbatim herein.

67. One or more Chicago Police Officers, without lawful authority, engaged in conduct which placed George Brown in reasonable apprehension of immediate battery.

68. The actions of one or more Chicago Police Officers were the direct and proximate cause of the injuries suffered by George Brown.

69. In taking these actions, the Chicago Police Officers were acting in the course and scope of their employment with the City of Chicago.

70. The City of Chicago is liable for the acts of its police officers while they are acting in the course and scope of their employment.

**WHEREFORE**, George Brown prays for judgment in his favor and against the defendant, City of Chicago, and that he be awarded compensatory and punitive damages, reasonable attorney's fees, the costs of this action, and such other and further relief as the Court deems just.

## COUNT III – STATE LAW BATTERY

1-66. Plaintiff, George Brown, repeats and realleges paragraphs 1 through 66 of Count I as paragraphs 1 through 66 of Count III, as though set forth verbatim herein.

67. One or more Chicago Police Officers, without lawful authority, physically abused George Brown, and committed acts of intentional, harmful and offensive contact with the person of George Brown, without provocation or legal justification.

68. The actions of one or more Chicago Police Officers were the direct and proximate cause of the injuries suffered by George Brown.

69. In taking these actions, the Chicago Police Officers were acting in the course and scope of their employment with the City of Chicago.

70. The City of Chicago is liable for the acts of its police officers while they are acting in the course and scope of their employment.

**WHEREFORE**, George Brown prays for judgment in his favor and against the defendant, City of Chicago, and that he be awarded compensatory and punitive damages, reasonable attorney's fees, the costs of this action, and such other and further relief as the Court deems just.

## COUNT IV – STATE LAW MALICIOUS PROSECUTION

1-66. Plaintiff, George Brown, repeats and realleges paragraphs 1 through 66 of Count I as paragraphs 1 through 66 of Count IV, as though set forth verbatim herein.

67. One or more Chicago Police Officers willfully and wantonly initiated criminal proceedings against George Brown and/or caused criminal proceedings to be continued against George Brown, without probable cause to believe George Brown had committed a crime.

68. With malice, willfulness, and/or reckless indifference to George Brown's rights the defendants created and gave false accounts regarding the facts underlying the charges against George Brown, and/or fabricated evidence. In taking these actions, the Chicago Police Officers were acting in the course and scope of their employment with the City of Chicago.

69. On December 15, 2017, all criminal proceedings against George Brown were terminated in his favor in a manner indicative of his innocence.

70. The City of Chicago is liable for the acts of its police officers while they are acting in the course and scope of their employment.

**WHEREFORE**, George Brown prays for judgment in his favor and against the defendant, City of Chicago, and that he be awarded compensatory and punitive damages, reasonable attorney's fees, the costs of this action, and such other and further relief as the Court deems just.

**COUNT V – STATE LAW INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

1-66. Plaintiff, George Brown, repeats and realleges paragraphs 1 through 46 of Count I as paragraphs 1 through 66 of Count V as though set forth verbatim herein.

67. The acts of the defendant Chicago Police Officers toward George Brown, were extreme and outrageous.

68. The defendant Chicago Police Officers intended to disregard, or recklessly disregarded, the probability that their conduct would cause George Brown to suffer emotional distress.

69. George Brown endured severe or extreme emotional distress.

70. The conduct of the defendant Chicago Police Officers actually and proximately caused George Brown's emotional distress.

71. In taking these actions, the Chicago Police Officers were acting in the course and scope of their employment with the City of Chicago.

72. The City of Chicago is liable for the acts of its police officers while they are acting in the course and scope of their employment.

**WHEREFORE**, George Brown prays for judgment in his favor and against the defendant, City of Chicago, and that he be awarded compensatory and punitive damages, reasonable attorney's fees, the costs of this action, and such other and further relief as the Court deems just.

## COUNT VI– RESPONDEAT SUPERIOR CITY OF CHICAGO

1. Plaintiff George Brown repeats and realleges the allegations contained in Counts I through V, as though set forth verbatim herein.

2. Illinois law, 735 ILCS 10/9-102, provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable when acting within the scope of their employment activities.

3. Defendants, Chicago Police Officers were, at all times relevant, acting within the course and scope of their employment with the City of Chicago. These Chicago Police Officers acted within the course and scope of their employment in committing the misconduct described herein.

**WHEREFORE**, George Brown prays for judgment in his favor and against the defendant, City of Chicago, for any tort judgment for compensatory damages for which its employees are liable, the costs of this action, and such other and further relief as the Court deems just.

## JURY DEMAND

George Brown hereby demands trial by jury.

**GEORGE BROWN**

By: *s/ Peter V. Bustamante*
_____
Peter V. Bustamante

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2018, I caused a true and correct copy of the above and foregoing **SECOND AMENDED COMPLAINT,** to be sent to all counsel of record via the Court's CM/ECF electronic filing system.

*s/ Peter V. Bustamante*

Peter V. Bustamante
17 North State Street
Suite 1550
Chicago, Illinois 60602
(312) 346-2072