IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE BROWN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 12 C 1764 |
| CITY OF CHICAGO, et al., | ) ) Honorable Charles R. Norgle Sr. |
| Defendants. | ) ) ) |

## OPINION AND ORDER

Defendants' motion for partial summary judgment [115] is granted in part and denied in part. Defendants' motion is granted as to Plaintiff's Count I unlawful pretrial detention claim and Count V intentional infliction of emotional distress claim. However, Plaintiff's claim of excessive force, which he couches within Count I, and assault (Count II) may proceed.

## STATEMENT

Plaintiff brings this action for damages pursuant to 42 U.S.C. § 1983 ("§ 1983") against Defendants City of Chicago, Officer George Moussa, and Officer Joseph Lopez (collectively "Defendants"). He claims that Officers Moussa and Lopez ("Defendant Officers") violated his Fourth and Fourteenth Amendment rights by using excessive force and fabricating evidence, leading to his unlawful detention that was not supported by probable cause (Count I). In addition to these civil rights claims, Plaintiff brings claims of assault (Count II), battery (Count III), malicious prosecution (Count IV), intentional infliction of emotional distress (Count V), and Respondeat Superior (Count VI). This Court has already dismissed the malicious prosecution claim. Dkt. 101. Defendants move for partial Summary Judgment as to Counts I, II, and V. For the following reasons, the motion is granted in part and denied in part.

Background

A party's response to a statement of facts must, in the case of any disagreement, include "specific references to the affidavits, parts of the record, and other supporting materials relied upon[.]". N.D. Ill. L.R. 56.1. "A party's obligation to support its facts with evidence is mandatory, and the Seventh Circuit repeatedly has held that the district court is within its discretion to enforce strict compliance with the requirements of Local Rule 56.1." Hanover Ins. Co. v. House Call Physicians of Illinois, No. 15 C 3684, 2016 WL 1588507, at *2 (N.D. Ill. Apr. 19, 2016); see, e.g., Yancick v. Hanna Steel Corp., 653 F.3d 532, 537 (7th Cir. 2011). "Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute." Outlaw v. Newkirk, 259 F.3d 833, 837 (7th Cir. 2001). Material facts are those "facts pertinent to the outcome of the issues identified in the summary judgment motion." Malec v. Sanford, 191 F.R.D. 581, 583 (N.D. Ill. 2000). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." N.D. Ill. L.R. 56.1(b)(3)(C); Banks v. Dart, No. 12 C 4333, 2014 WL 625865, at *2 (N.D. Ill. Feb. 18, 2014).[1]

These are the material, undisputed facts.[2] In March of 2011, Officers Lopez and Moussa were assigned to the Chicago Police "mobile task force" patrolling high-crime areas. Around 11:55 p.m. on March 10, 2011, Plaintiff was driving a black Chevy Tahoe in the area of Quincy Street and Laramie Avenue, Chicago, IL, which is a high crime area. At that time Officer Lopez was a passenger in a Chicago Police vehicle driven by Sergeant John Cannon. Officers Keany and Pruger

---

[1] Plaintiff did not respond to paragraphs 48-56 in Defendants' Statement of Facts, so they are deemed admitted. Dkt. 116 at 7; Dkt. 125 at 10.

[2] These facts were taken from Defendants' LR 56.1 Statement of Material Facts; Plaintiff's Response to Defendants' LR 56.1 Statement of Material Facts; Plaintiff's Statement of Additional Facts; and Defendants' Response to Plaintiff's Statement of Additional Facts.

were also in the vehicle. Officer Moussa was in a different Chicago Police vehicle with Officers Bracho and Rashan.

As Plaintiff was driving on Quincy, the squad car with Sgt. Cannon and Officer Lopez came to a stop in front of Plaintiff's vehicle. The squad car beamed a bright light, and Plaintiff could not see much with the light shining on him. Plaintiff did see the vehicle in front of him and began to back his car away from the vehicle. Plaintiff asserts that he did not know it was a police vehicle. Officer Lopez and Sgt. Cannon exited their vehicle and approached Plaintiff's vehicle with their guns drawn, allegedly because Plaintiff's car did not have its headlights on. Plaintiff exited his vehicle and ran.

While Plaintiff was running, he was holding his right side and pulled out one marijuana cigarette from his pants pocket. Officer Lopez went over the police radio to inform the other officers that Plaintiff was fleeing, including his direction of flight and that Plaintiff was holding his waist. Officer Moussa heard these radio transmissions. After Plaintiff ran, the squad car that Officer Moussa was in went around the block and came to a stop at the west end of Quincy, the direction that Plaintiff had run. At some point, Plaintiff put the marijuana cigarette in his mouth.

A physical altercation ensued between Plaintiff and the Officers. Officer Lopez testified that Plaintiff punched him in the face with a closed fist, and that Officer Moussa tased Plaintiff. But according to Plaintiff, he was tackled to the ground from behind, he balled-up, Officer Lopez punched him in the head and choked him, and Moussa tased him 4 times. Plaintiff states that he was told to "open your mouth" and "spit it out" as he was being choked. However, Plaintiff did eventually swallow the marijuana cigarette.

Plaintiff asserts that the taser left a hole in his back, that he had scabs on his head and puncture wounds, that for two weeks he could not feel his legs and that his throat hurt, that he

3

sweated for three days at Cook County Jail and that he there sought medical treatment for a sharp pain on his left side. Defendants deny these allegations.

As a result of the incident, Plaintiff was arrested by Officer Lopez and charged with resisting a police officer and aggravated battery. Officer Moussa filed criminal complaints against Plaintiff alleging reckless conduct nearly striking pedestrians, criminal trespass to motor vehicle, resisting arrest and a traffic ticket for no headlights.

A preliminary hearing was held on March 24, 2011, in the Circuit Court of Cook County before the Honorable Judge Kenneth Fletcher. Officer Moussa testified that Plaintiff fled from the officers, specifically Officer Lopez, on foot while holding his side and that the Officers detained Plaintiff only after he continued to flee. Ultimately, the presiding Judge Kenneth Fletcher made a finding of probable cause, and decided to detain Plaintiff pending bail payment of $100,000.00.

On March 31, 2011, the Cook County State's Attorney brought an information charging Plaintiff with aggravated battery, and all other charges were dropped. On February 7, 2012, Plaintiff's case proceeded to a bench trial before Judge Clayton Crane, where Plaintiff testified. He testified that a police vehicle stopped in front of him and the officers waved their hands at him. Plaintiff asserted that he figured they were trying to get past him, which is why he backed up. After he backed his car away, the officers exited the vehicle with their guns drawn and ordered him out of his car. Plaintiff then panicked and ran. At the conclusion of the trial, Judge Crane found Plaintiff guilty of a misdemeanor resisting arrest and not guilty of the felony aggravated battery charge. Plaintiff was sentenced to 300 days in the Cook County Department of Corrections, time served.

Plaintiff disputed his conviction and a new trial was ordered. On October 14, 2015 and October 15, 2015 Plaintiff's case was retried before a jury on an Information charging him with

aggravated battery; while the State never amended the Information charging Plaintiff with aggravated battery, the State proceeded to try Plaintiff for resisting arrest. At the conclusion of Plaintiff's second trial, on October 15, 2015, Plaintiff was again found guilty of a misdemeanor resisting arrest. Plaintiff was never convicted of Aggravated Battery. Plaintiff was again sentenced to 300 days in the Cook County Department of Corrections, time served.

Plaintiff appealed his conviction. On August 21, 2017, the Appellate Court reversed and remanded Plaintiff's case. The Appellate Court reversed Plaintiff's conviction based on the stale charging document used by the Cook County State's Attorney's Office; a new charging document was not filed prior to the second trial. The Appellate Court also reversed the conviction for the failure of the Court to give a jury instruction regarding self-defense.

In its conclusion, the Appellate Court stated that "[v]iewing the [POD camera] video in conjunction with all the testimony in the record, there are reasons to believe that the first car the officers confronted was defendant's car with its lights on and, therefore, that the officers lacked a legal basis to arrest defendant." Dkt. 133, ¶ 5.[3] However, the Appellate Court urged the State to consider whether a retrial of this case would be worthwhile because Plaintiff has already discharged his sentence. The Appellate Court further stated that its opinion was not a vindication of Plaintiff in any way.

Plaintiff alleges that as a result of this incident he was "kind of upset" about the charges that were brought against him. He further alleges that he was "kind of upset" about the number of times he was tased. Plaintiff testified at deposition that he has not sought treatment from a psychiatrist, psychologist, or therapist as a result of this incident.

---

[3] It is unclear whether Defendants admit or deny that Plaintiff's headlights were on. See Dkt. 133 at 5; but see Dkt. 133 at 10. Ultimately, this admission is irrelevant to the Court's findings.

On September 18, 2018, this Court issued a written order on Defendants' Partial Motion to Dismiss the present case. This Court held that Plaintiff had pled himself out of court regarding his malicious prosecution claim because Plaintiff admitted that he fled from the officers. This Court concluded that Defendant Officers had probable cause to arrest Plaintiff for resisting law enforcement.

Plaintiff's remaining claims proceeded to discovery, and Defendants now move for summary judgment on Plaintiff's civil rights claims of unlawful pretrial detention and excessive force (Count I), assault (Count II), and intentional infliction of emotional distress (Count V).

## Legal Standard

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). "There is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Crawford v. Countrywide Home Loans, Inc., 647 F.3d 642, 648 (7th Cir. 2011) ("A party moving for summary judgment need not introduce evidence rendering its opponents' claims altogether impossible in order to trigger the opponent's burden to answer with its own supporting evidence."). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine

6

issue of fact." Gonzalez v. City of Elgin, 578 F.3d 526, 529 (7th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). "Summary judgment is the 'put up or shut up' moment in a lawsuit." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003)). "Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). If the nonmovant "is unable to 'establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial,' summary judgment must be granted." Benuzzi v. Bd. of Educ. of City of Chicago, 647 F.3d 652, 662 (2011) (quoting Celotex Corp., 477 U.S. at 322).

The Court must view "the record in the light most favorable to the nonmovant and [avoid] the temptation to decide which party's version of the facts is more likely true." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

### Count I – Civil Rights Claims

In Count I of his Second Amended Complaint, Plaintiff brings civil rights claims under the Fourth and Fourteenth Amendments. He asserts that these rights were violated because Officer Moussa used excessive force when tasering Plaintiff, the Officers fabricated evidence when testifying against Plaintiff, and the Officers' actions—unsupported by probable cause—led to Plaintiff's unlawful pre-trial detention of nearly one year. Dkt. 89 at 8-10. Among other specific allegations, Plaintiff asserts that POD camera evidence showed that Defendant Officers' testimony was fabricated because, contrary to the Officers' testimony, his car lights were in fact on and there was therefore no reason or probable cause to arrest him in the first place. He also contends that

7

Defendant Officers "covered" their use of excessive force by fabricating that Plaintiff hit Officer Lopez, and falsely charged Plaintiff with aggravated assault. He argues the aggravated assault charge "was the reason for Plaintiff's incarceration" and pushed his bond to $100,000, whereas "had [Plaintiff] been charged with a misdemeanor resisting arrest, he would have received an I-Bond." Dkt. 125, ¶ 44.

First, any claim that Plaintiff's pretrial detention was not based on probable cause is incorrect. This Court has already held that Officers Lopez and Moussa had probable cause to arrest Plaintiff because he fled. Dkt. 101. He also, admittedly, presented and swallowed a marijuana cigarette. As Defendants point out, "regardless of the basis for Plaintiff's initial stop, at the time Plaintiff fled from the police, Defendants obtained probable cause to arrest Plaintiff . . . and the exclusionary rule does not apply in Sec[tion] 1983 cases." Dkt. 133 at 2 (citing Vaughn v. Chapman, 662 F. App'x 464, 467 (7th Cir. 2016) ("Although Vaughn alleges that this evidence was the fruit of an illegal search of the car, this would not undermine its relevance to the question of probable cause. The exclusionary rule does not apply in a § 1983 suit against police officers.")); see also Townes v. City of New York, 176 F.3d 138, 145 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine cannot link the unreasonable seizure and search to Townes's conviction and incarceration because this evidentiary doctrine is inapplicable to civil § 1983 actions.").

Judge Crane decided to detain Plaintiff pending payment of bail, at least in part, based on his resisting arrest. Plaintiff admits that Officer Lopez filed criminal complaints against him for aggravated battery and resisting arrest, and that Officer Moussa filed criminal complaints against him that included resisting arrest. Dkt. 125, ¶ 11. Probable cause existed to arrest Plaintiff on that charge. Dkt. 101. Plaintiff argues that he did not know that Lopez and the other Officers were police officers, and that "Lopez could not say that he identified himself as a police officer." Dkt.

8

129 at 13. But probable cause is not based on the subjective mind of the arrestee; the analysis is based on whether the "facts and circumstances within [the Officer's] knowledge . . . would warrant a prudent person in believing that the suspect had committed or was committing an offense. Id. (citing Xing Qian v. Kautz, 168 F.3d 949, 953 (7th Cir. 1999)). Plaintiff cannot proceed to trial on his pretrial detention claim simply because he was charged with aggravated battery, but ultimately was never found guilty of it.

Plaintiff asserts that the Defendant Officers' false testimony caused his unlawful pretrial detention, but his claim here again fails. First, a "§ 1983 claim for unlawful pretrial detention rests *exclusively* on the Fourth Amendment." Lewis v. City of Chicago, 914 F.3d 472, 478 (7th Cir. 2019) (emphasis in original). "[A]ll § 1983 claims for wrongful pretrial detention—whether based on fabricated evidence or some other defect—sound in the Fourth Amendment." Id. at 479 (citing Manuel v. City of Joliet, Illinois, 903 F.3d 667, 670 (7th Cir. 2018)). The Court abides by this precedent and will not address Defendants' argument that Plaintiff's claim fails under the Fourteenth Amendment. And as the Court has already explained, fleeing from police is a form of resisting or obstructing a police officer. E.g., People v. Jones, 245 Ill. App. 3d 302, 307, 613 N.E.2d 354, 357 (1993). Because the Officers had probable cause to detain Plaintiff, his pretrial detention claim fails under the Fourth Amendment.[4]

However, Plaintiff's excessive force claim survives Defendants' motion. Plaintiff and Defendants disagree about the conduct of Defendant Officers and Plaintiff during their physical altercation, including whether Plaintiff struck Officer Lopez and whether Officer Lopez struck, hit, or choked Plaintiff. Dkt. 129 at 8. It is not for the Court to make credibility determinations at

---

[4] The Court need not address Defendants' argument that Plaintiff fails to prove that the officers fabricated evidence, nor their claim of absolute immunity regarding Defendant Officers' judicial testimony. See, e.g., Polzin v. Gage, 636 F.3d 834, 838 (7th Cir. 2011).

9

summary judgment or decide whose version of the facts is more likely true. Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003). The Court notes that Defendants do not, in this motion, seek summary judgment regarding Plaintiff's battery claim (Count III). Plaintiff's claim of excessive force by Defendant Officers may proceed.

### Count V – Intentional Infliction of Emotional Distress

Plaintiff's Count V claim for intentional infliction of emotional distress ("IIED") fails on summary judgment. First, Plaintiff's bar on this claim is a "high" one. Richards v. U.S. Steel, 869 F.3d 557, 566 (7th Cir. 2017). To state a claim for IIED under Illinois law, a plaintiff must allege: (1) extreme and outrageous conduct; (2) that the actor intends to cause severe emotional distress or that the actor is aware of a high probability of causing severe emotional distress; and (3) the conduct actually caused severe emotional distress. Breneisen v. Motorola, Inc., 512 F.3d 972, 983 (7th Cir. 2008). If any one of these elements is missing, a party cannot establish an IIED claim. See, e.g., Smith v. Dominick's Finer Foods, Inc., No. 05 C 4461, 2009 WL 2358580, at * 6 (N.D. Ill. July 28, 2009) ("Plaintiff has the burden of establishing the elements of his IIED claim.").

The Court takes the facts as most favorable to Plaintiff, and according to Plaintiff, he never attacked an Officer and was instead punched in the head, choked, and tased at maximum capacity 4 times which caused him to have a hole in his back, scabs on his head, leg numbness, throat soreness, excessive sweating, and sharp pain on his left side.

These allegations—taken as true—simply do not rise to the type of severe emotional distress required to sustain Plaintiff's Count V claim. He fled from Officers who had probable cause to arrest him, and swallowed a marijuana cigarette during the physical altercation that ensued. The injuries claimed by Plaintiff have subsided. Most, if not all, did so in three days to two weeks. In addition, Plaintiff stated that he was only "kind of upset" about the incident, the

charges, and the amount of tasing, and that he has not sought treatment from a psychiatrist, psychologist, or therapist as a result. Dkt. 116, ¶¶ 51-53. This is not the type of distress such that "no reasonable person could be expected to endure it." Adams v. Sussman & Hertzberg, Ltd., 292 Ill. App. 3d 30, 39, 684 N.E.2d 935, 942 (1st Dist. 1997). Plaintiff may be able to show that—under these circumstances—the force used on him was excessive, and the present motion does not contest his battery claim. But his IIED claim fails as a matter of law.

## Count II – Assault

Under Illinois law, assault is defined as "conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1(a). Assault requires (1) a threatening gesture, or otherwise innocent gesture made threatening by accompanying words, and (2) creates a reasonable apprehension of an imminent battery. Kijonka v. Seitzinger, 363 F.3d 645, 647 (7th Cir. 2004).

While Defendants do not contest Plaintiff's battery claim in this motion, they move for summary judgment on Count II, arguing that Plaintiff never actually alleges that he was in fear of receiving a battery. Rather, say Defendants, Plaintiff alleges only that he was tackled from behind and that he balled up on the ground without a chance to see who was attacking him and without anticipating being tased. Plaintiff counters that his headlights were in fact on, the Officers exited their vehicle and pointed a gun at him in a crime-ridden neighborhood, and they never identified themselves as police officers.

Taking the facts in the light most beneficial to Plaintiff, the Court denies the motion with regard to Count II, and Plaintiff's assault claim may proceed.

11

## Conclusion

For the reasons stated, the Court grants Defendants' motion in part and denies in part. Summary judgment is granted in favor of Defendants as to Count V. The Court also grants the motion in favor of Defendants as to Plaintiff's Count I claim of unlawful pretrial detention based on fabricated evidence and lack of probable cause. The Court denies the summary judgment motion as to Plaintiff's claim of excessive force (Count I) and assault (Count II).

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: October 16, 2019